IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RUTH ABRAMS, | : | |
| | : | C. A. No. _____ |
| Plaintiff, | : | |
| | : | |
| v. | : | **JURY TRIAL DEMANDED** |
| | : | |
| JAMES L. WAINSCOTT, ROBERT H. JENKINS, | : | |
| RICHARD A. ABDOO, JOHN S. BRINZO, | : | |
| DENNIS C. CUNEO, WILLIAM K. GERBER, | : | |
| DR. BONNIE G. HILL, RALPH S. | : | |
| MICHAEL III, SHIRLEY D. PETERSON, | : | |
| DR. JAMES A. THOMSON, ALBERT E. | : | |
| FERRARA, JR., DAVID C. HORN, JOHN F. | : | |
| KALOSKI, DOUGLAS W. GANT and | : | |
| AK STEEL HOLDING CORPORATION, | : | |
| | : | |
| Defendants. | : | |

## VERIFIED COMPLAINT

Plaintiff alleges, upon information and belief based upon, *inter alia*, the investigation made by and through her attorneys, except as to those allegations that pertain to the plaintiff herself, which are alleged upon knowledge, as follows:

## JURISDICTION

1.     The jurisdiction of this court is founded upon: (a) federal question jurisdiction, pursuant to § 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa, and pursuant to 28 U.S.C. § 1331; (b) diversity of citizenship, 28 U.S.C. § 1332; and (c) supplemental jurisdiction, 28 U.S.C. § 1367. The plaintiff is a citizen of the Commonwealth of Pennsylvania. The defendants are all citizens of jurisdictions other than Pennsylvania. The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

2.      The claims herein arise under § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and

Rule 14a-9, 17 C.F.R. § 240.14a-9, of the United States Securities and Exchange Commission (the

"SEC") promulgated thereunder, Item 402 of Reg. S-K, 17 C.F.R. § 229.402 (Feb. 28, 2010), SEC

Schedule 14-A (Information Required in Proxy Statement), 17 C.F.R. §14a-101, and the laws of

Delaware.  In addition, § 162(m) of the Internal Revenue Code ("IRC," the "Tax Code," or the

"Code"), 26 U.S.C. § 162(m), and the Treasury Regulations, 26 C.F.R. § 1.162-27, are applicable.

3.      In connection with the acts, omissions, conduct, and wrongs alleged herein,

defendants used the mails and the means or instrumentalities of interstate commerce in committing

the wrongs alleged herein.

4.      This action is not a collusive one to confer jurisdiction that the court would otherwise

lack.  This action does not allege securities fraud or any other fraud.  It does not seek to recover

damages, but rather specific, equitable relief.  This is an action based on a false or misleading proxy

statement and on breach of fiduciary duty, and the consequential harm that flowed directly from

these wrongs.

## THE PARTIES

5.      Defendant AK Steel Holding Corporation ("AK Steel" or the "Company") is a

corporation organized under the laws of the State of Delaware.  The Company's last fiscal year

ended December 31, 2010.  As of October 27, 2010, AK Steel had outstanding 109,992,816 shares of

common stock, which are traded on the New York Stock Exchange under the symbol "AKS."  The

Company is a publicly held corporation within the meaning of IRC § 162(m)(2) of the IRC.  AK

Steel, through its subsidiaries, produces flat-rolled carbon, stainless, and electrical steels, and tubular

products primarily in the United States and internationally.

6.      The plaintiff has been a stockholder of the Company continuously for many years.

2

163282

7. Defendants James L. Wainscott, Robert H. Jenkins, Richard A. Abdoo, John S. Brinzo, Dennis C. Cuneo, William K. Gerber, Dr. Bonnie G. Hill, Ralph S. Michael III, Shirley D. Peterson, and Dr. James A. Thomson, the "Director Defendants," are all the members of the Company's board of directors, the "Board." In their capacities as directors, they are each responsible as fiduciaries to the Company and its shareholders.

8. Defendants James L. Wainscott, Albert E. Ferrara, Jr., David C. Horn, John F. Kaloski, and Douglas W. Gant (collectively, the "Executive Defendants") were five of the Company's Named Executive Officers as defined in 17 C.F.R. § 229.402(a)(3), Covered Employees as defined in Internal Revenue Code § 162(m)(3), and Officers of the Company, as defined in 10 Del. C. § 3114(b).

9. Defendants Abdoo, Brinzo, Hill, Jenkins, and Michael are all the members of the management development and compensation committee (hereinafter "Compensation Committee") of the Company's board of directors. Defendant Abdoo is the chair of the Compensation Committee. The Compensation Committee is responsible for overseeing the Company's management compensation policies and procedures.

10. Defendants Abdoo, Brinzo, Cuneo, Jenkins, and Peterson, are members of the nominating and governance committee (hereinafter "Governance Committee"), which is charged with the responsibility for implementing the policies underlying Section 162(m) of the IRC. Defendant Jenkins is the chair of the Governance Committee.

## WRONGFUL ACTS AND OMISSIONS

11. In connection with the acts, omissions, misconduct, and wrongs alleged herein the defendants used the mails and the means or instrumentalities of interstate commerce.

3

163282

12.     Plaintiff brings this action derivatively in the right of and for the benefit of defendant AK Steel against the Director Defendants and the Executive Defendants, to obtain specific equitable relief for the false or misleading proxy statement, filed with the SEC on April 12, 2010 (the "Proxy Statement") and distributed in advance of the annual meeting of AK Steel shareholders held on May 27, 2010, and to hold defendants liable for breach of their fiduciary duties of care and loyalty and their committing of waste.  The Proxy Statement failed to comply with the Exchange Act, SEC Regulations, Treasury Regulations, and Delaware law governing the contents of proxy statements.

13.     The Proxy Statement contained materially false or misleading statements, as set forth below.  As a result, the Proxy Statement deprived the stockholders of the ability to assess the information provided therein for the purposes of re-approving the LTIP and the SIP and approving the SIP amendment.  The LTIP, SIP and SIP Amendment provide for stock-based compensation and for performance awards paid in equity meant to qualify under the Section 162(m) of the IRC.

14.     IRC § 162(m) subjects publicly-held corporations, such as the Company, to special restrictions concerning the compensation paid to Covered Employees, sometimes referred to as the "Named Executive Officers."  Whereas IRC § 162(a)(1) generally allows the Company to take an income tax deduction for "a reasonable allowance for salaries or other compensation for personal services actually rendered" by its employees, IRC § 162(m) imposes requirements that must be met in order for the annual compensation to the Company's Covered Employees in excess of $1 million to be tax-deductible.  The Covered Employees whose compensation is subject to these restrictions are those officers whose total individual compensation is, under the Exchange Act, required to be reported to the stockholders each year. IRC § 162(m)(3). Besides the CEO, the Covered Employees are the "four highest compensated officers." Treas. Reg. §1.162-27(c)(2)(i)(B).  Whether an employee is among the four highest compensated officers is determined under the compensation

4

disclosure rules of the Exchange Act and not under the Tax Code. Treas. Reg. §1.162-27(c)(2)(ii). Currently this information is reported in the annual proxy statement. The SEC refers to the Covered Employees as "the Named Executive Officers." Compensation paid to the Company's Covered Employees in excess of $1 million per year each is not deductible unless it is provided in compliance with the requirements of IRC § 162(m) and its implementing regulation, Treas. Reg., § 1.162-27.

15.     Covered Employees are the persons for whom tax-deductible compensation awards must meet the statutory standards. IRC § 162(m)(4)(A); Treas. Reg. § 1.162-27(b). The Proxy Statement identifies these executives in its Summary Compensation Table and reports their compensation for the past three years.

16.     Moreover, IRC § 162(m) provides that annual compensation in excess of $1 million is not tax-deductible unless the compensation is performance-based, pursuant to a plan containing objective criteria that the stockholders have pre-approved. Under the Treasury Regulations, in order to satisfy this requirement a pre-established performance goal must state, in terms of an objective formula or standard, the method for computing the amount of compensation payable to the Covered Employee if the goal is attained. 26 CFR § 1.162-27(e)(2)(ii). Further, performance goals can qualify as "objective" only if a "third party having knowledge of the relevant facts could determine whether the goal is met." 26 CFR § 1.162-27(e)(2)(ii).

17.     Congress enacted IRC § 162(m) in 1993 as part of its important, historic, long-standing effort to regulate corporate affairs in favor of stockholders and other investors, as a counterweight to the policies of many states to regulate corporations in favor of officers, directors, and other insiders. Here, Congress employed the Code as an instrument of corporate governance. As the Joint Committee on Taxation said, ***"The $1 million deduction limitation reflects corporate governance issues regarding excessive compensation, rather than issues of tax policy."*** Joint

Committee on Taxation, Report of Investigation of Enron Corporation and Related Entities Regarding Federal Tax and Compensation Issues and Policy Recommendations, 2003 WL 25599037 n.2211 and accompanying text (2003). The purpose of IRC § 162(m) is to align the performance incentive with the interests of shareholders. *See* Internal Revenue Service Chief Counsel Attorney Memorandum, IRS AM 2009-006, 2009 WL 2138881 (July 17, 2009).

18.     It is the public policy of the United States that corporate senior executive compensation must be reasonable, performance based, objectively determined and pre-approved by stockholders.  In furtherance of this public policy, another purpose of IRC § 162(m) is to give stockholders a say on corporate executive compensation.  H.R. Conf. Rep. 103-213, 1993 WL 302291 at *587 ("the compensation must be approved by a majority of shares voting in a separate vote").    The United States has increased the voice of stockholders on corporate executive compensation with the advisory say-on-pay provisions of the Dodd-Frank Act. PL 111-203, July 21, 2010, 15 U.S.C. § 78n-1.

19.     Though the purpose of IRC § 162(m) is aimed at corporate governance, as a part of the Tax Code, it is construed like other Tax Code provisions.    Tax deductions are a matter of legislative grace and are to be construed narrowly unless the text of the statute authorizing the deductions reflects a contrary congressional intent.  The statute at issue here reflects no congressional intent for a broad construction.  Rather, the tax deduction for compensation paid must be reasonable, IRC § 162(a)(1), and  IRC § 162(m) specifically disallows that deduction for publicly-held corporations in excess of $1 million annually to each of the Covered Employees unless it is objectively determined, performance-based, and pre-approved by the stockholders.  In addition, an independent committee of the board of directors must certify that any payments have been earned and correctly determined.  IRC § 162(m)(4)(C)(iii).

6

20.     The exception to the disallowance applies to a narrow set of compensation programs that are both strictly compliant with the statute and the regulations and timely approved by the stockholders. As set forth below, the Company's incentive plans do not meet the exacting standards of the IRC and the Treasury Regulations to qualify as tax deductible. Accordingly, the Company cannot take a tax deduction for the LTIP, SIP and SIP Amendment compensation awards.

21.     In addition to the disclosure requirements for stockholder approval under IRC § 162(m), SEC regulations, 17 C.F.R. § 240.14a-101 (Item 8(b)), require that a proxy statement that solicits approval of a compensation plan for executive officers must include the information set forth in Item 402(b) of Regulation S-K, which governs what must be disclosed to shareholders about incentive and performance-based compensation plans.

22.     The Proxy Statement contained materially false or misleading statements and omitted material facts. As set forth in detail below, defects with regard to the LTIP include: (a) the LTIP will continue in effect with the Board empowered to make awards under it even if the stockholders do not re-approve the material terms of the performance goals of the Company's LTIP; and (b) the possibility of paying bonuses, in whole or in part, to a Covered Employee even if they retire or are otherwise removed from participation in the LTIP, before the performance goal is achieved and therefore before the bonus is earned. Defects with regard to the SIP (including the SIP Amendment) include (a) the SIP (including the SIP Amendment) will continue in effect with the Board empowered to make awards under it even if the stockholders do not re-approve of the material terms of the performance goals under the SIP (including the SIP Amendment); (b) the vagueness and lack of objectivity of the performance goals in the SIP (including the SIP Amendment); and (c) the possibility of accelerated or waived restrictions on restricted stock awards, or otherwise provide

163282

payment of performance awards, to a Covered Employee under the SIP (including the SIP Amendment), before the bonus is earned.

23.     The Director Defendants authorized the distribution of the Proxy Statement to solicit the stockholders' proxies for, *inter alia*, re-approval of the material terms of the performance goals of the Company's long-term incentive plan ("LTIP"), re-approval of the material terms of the performance goals under the Company's stock incentive plan ("SIP"), and approval of the amendment and restatement of the Company's SIP ("SIP Amendment").

24.     The Director Defendants and the Executive Defendants permitted the use of their names in the Proxy Statement to solicit proxies.

25.     At the May 27, 2010 annual meeting, the Company's stockholders re-approved the material terms of the performance goals of the Company's LTIP, re-approved of the material terms of the performance goals of the Company's SIP, and approved of the SIP Amendment. As a result, the 2010 proxy statement rendered the stockholders unwitting agents of self-inflicted damage.

26.     The Proxy Statement reported that the Board unanimously recommend that the stockholders vote for reapproval of the material terms of the performance goals under the LTIP. The Proxy Statement represented that under the LTIP it was necessary for the stockholders to re-approve the material terms of the performance goals of the company's LTIP for the Covered Employees' compensation to be tax deductible by the Company. But, with regard to the LTIP, the 2010 Proxy Statement expressly stated that "[i]n the event stockholders fail to re-approve the performance-based terms of the [LTIP], any performance-based compensation granted by the Company to Executive Officers under the [LTIP] in the future would not meet the conditions for tax deductibility under Section 162(m), thereby increasing the Company's cost of such compensation." These statements regarding the tax deductibility of LTIP were false or misleading because under Treasury Regulation §

8

1.162-27 payments of performance-based compensation made regardless of stockholder approval are not tax deductible. Moreover, the statements further demonstrate that the Board utterly disregarded the corporate governance purpose of reigning in excessive executive compensation enacted by Congress in the form of IRC § 162(m). The corporate governance purpose is also to give stockholders a say on corporate executive compensation at this level.

27.     The Proxy Statement reported that the Board unanimously recommend that the stockholders vote for reapproval of the material terms of the performance goals under the SIP and the SIP Amendment. The Proxy Statement represented that under the SIP it was necessary for the stockholders to re-approve the material terms of the performance goals of the Company's SIP for the Covered Employees' compensation to be tax deductible by the Company. With regard to the SIP, the Proxy Statement expressly stated that "[i]n the event stockholders fail to re-approve the performance-based terms of the [SIP], any performance-based compensation granted by the Company to Executive Officers under the [SIP] in the future would not meet the conditions for tax deductibility under Section 162(m), thereby increasing the Company's total cost of such compensation if it is utilized as part of the overall compensation program." With regard to the SIP Amendment, the Proxy Statement expressly stated that "[i]n the event that the stockholders do not approve the [SIP Amendment], the [SIP] would remain in full force and effect in its form immediately prior to the proposed Amendments." Each of these statements rendered the Proxy Statement false or misleading because under Treasury Regulation § 1.162-27(e)(4)(i), payments of incentive-based compensation made regardless of stockholder approval are not tax deductible. The statements further demonstrate that the Company and its board of directors have utterly disregarded the corporate governance purpose of reigning in excessive executive compensation enacted by

163282

Congress in the form of IRC § 162(m) and gives stockholders a binding say on pay for this level of compensation.

28.     Because the LTIP and the SIP (including the SIP Amendment) would remain in effect even if the stockholders voted "No" on the proposals, and because the Board would remain empowered to make awards under those plans regardless of a "No" vote, as the Proxy Statement reported, a positive vote of the stockholders would not make payments under the LTIP or the SIP (including the SIP Amendment) tax-deductible, under Treas. Reg. § 1.162-27(e)(4)(i), which provides as follows:

> General rule. The material terms of the performance goal under which the compensation is to be paid must be disclosed to and subsequently approved by the shareholders of the publicly held corporation before the compensation is paid. *The requirements of this paragraph (e)(4) are not satisfied if the compensation would be paid regardless of whether the material terms are approved by shareholders.* The material terms include the employees eligible to receive compensation; a description of the business criteria on which the performance goal is based; and either the maximum amount of compensation that could be paid to any employee or the formula used to calculate the amount of compensation to be paid to the employee if the performance goal is attained (except that, in the case of a formula based, in whole or in part, on a percentage of salary or base pay, the maximum dollar amount of compensation that could be paid to the employee must be disclosed).

(Emphasis added).   Significantly in this connection, the Proxy Statement did not state that the Company reserved the right to make discretionary awards that were not part of the LTIP and SIP (including the SIP Amendment), but only that the stockholders' refusal to approve the related proposals would trigger non-tax-deductible awards under those plans. Thus, the aforesaid representation in the Proxy Statement that payments under the LTIP and/or SIP (including the SIP Amendment) would be tax-deductible if the stockholders approved the proposals was materially false or misleading.

163282

29.     The Proxy Statement was also false or misleading in representing that the SIP

(including the SIP Amendment) are tax-deductible because they provide that awards will be made to

Covered Employees if they retire or are involuntarily terminated for reasons other than cause before

the bonus is earned.  This is contrary to Treas. Reg. § 1.162-27(e)(2)(v), which provides:

> Compensation does not satisfy the requirements of this paragraph (e)(2) if the facts
> and circumstances indicate that the employee would receive all or part of the
> compensation regardless of whether the performance goal is attained. Thus, *if the
> payment of compensation under a grant or award is only nominally or partially
> contingent on attaining a performance goal, none of the compensation payable
> under the grant or award will be considered performance-based.*

(Emphasis added).  The regulation does not allow the deduction if the Covered Employee would

receive all or part of the compensation regardless of whether the performance goal is attained.  Thus,

the representation that tax deductible performance awards may be made to Covered Employees if

they retire or involuntarily terminated for reasons other than cause before the bonus is earned is false

or misleading.

30.     The Proxy Statement was also false or misleading in representing that performance

bonuses under the SIP (including the SIP Amendment) are tax-deductible, since bonuses may be paid

to Covered Employees if the Compensation Committee determines to accelerate or waive restrictions

on restricted stock awards, or otherwise provide payment of performance shares at any time,

including before the bonus is earned.  Treas. Reg. § 1.162-27(e)(2)(v) does not allow the deduction if

the Covered Employee would receive all or part of the compensation regardless of whether the

performance goal is attained.  Thus, the representation that tax deductible performance bonuses may

be paid to Covered Employees on an accelerated basis, without restrictions, or otherwise at any time,

including before the end of the period in which the bonus is earned is materially false or misleading.

11

31.     Moreover, the Proxy Statement was false or misleading in representing that the LTIP is tax-deductible because the LTIP provides for prorated payment of performance bonuses to Covered Employees if they retire before the bonus is earned. Treas. Reg. § 1.162-27(e)(2)(v) does not allow the deduction if the Covered Employee would receive all or part of the compensation regardless of whether the performance goal is attained.

32.     The LTIP does not qualify for tax deductibility because performance-based compensation may be paid regardless of whether the goal is attained. Treas. Reg. § 1.162-27(e)(2)(v) provides an exception to the regulation's bar on tax deductibility for compensation that is "payable upon death, disability, or change of ownership or control." In those instances, while such payments upon death, disability or change of ownership are not tax deductible, they do not disqualify the plan. But the regulation does not provide such an exception for payment upon retirement. However, because the LTIP provides for performance payment upon retirement regardless of whether the goal is achieved, payments under the LTIP lack the characteristics required for tax-deductiblity. The Proxy Statement was false or misleading thereby because it fails to adequately disclose these facts.

33.     The 2010 Proxy Statement was also materially false or misleading in that it omitted to disclose, with specificity, the material terms and provisions under which the incentive compensation is to be paid, as required by IRC § 162 (m)(4)(C)(ii). The House Conference Report, H.R. Conf. Rep. 103-213 at *588, 1993 WL 302291 (Aug. 4, 1993), reciting the intent of Congress in passing IRC § 162 (m)(4)(C)(ii), states:

> In developing standards as to whether disclosure of the terms of a plan or agreement is adequate, the Secretary [of the Treasury] should take into account the SEC rules regarding disclosure. To the extent consistent with those rules, however, disclosure should be as specific as possible.

12

The Treasury Regulations expressly refer to the applicability of the SEC regulations. Treas. Reg. § 1.162-27(e)(4)(v).

34.     The performance goals as defined in the Article 8.8 of the SIP (including the SIP Amendment) are too vague. Treasury Regulation §1.162-27(e)(2)(ii) require a performance goal to state an objective formula or standard to compute the compensation. The legislative history H.R. Conf. Rep. 103-213, 1993 WL 302291 at *588 provides "it would not be adequate if the shareholders were merely informed that an executive would be awarded $x 'if the executive meets certain performance goals established by the compensation committee.'" According to SIP Amendment Article 8.8(a), the performance goals permit an award to be based upon one or more of the following: "total shareholder return; earnings; earnings per share; net income; revenues; operating profit; income before taxes, depreciation and/or amortization; cash flow; expenses; market share; return on assets; return on capital employed; return on equity; assets; value of assets; Fair Market Value of Shares; regulatory compliance; safety standards; quality standards; cost reduction objectives; satisfactory internal or external audits; improvement of financial ratings; achievement of balance sheet or income statement objectives; profit per ton shipped; or other financial, accounting or quantitative objectives established by the Committee." Moreover, Article 8.8(b) provides "[p]erformance criteria and objectives may include or exclude extraordinary or unusual charges or credits; pension or other employee benefit plan corridor charges or credits; losses from discontinued operations; restatements and accounting changes and other unplanned special charges such as restructuring expenses; acquisitions; acquisition expenses, including expenses related to impairment of goodwill or other intangible assets; stock offerings; stock repurchases and loan loss provisions. Such performance criteria and objectives may be particular to a line of business, subsidiary or affiliate or the Company generally, and may, but need not be, based upon a change or

13

an increase or positive result." These performance goals are vague and lack the specificity that the regulations require, and they do exactly what the aforesaid Conference Report said should not be done. Under the regulations, payments under the SIP and the SIP Amendment would not be tax deductible because the performance goals do not state an objective formula or standard to compute the compensation, and a third party would be unable to calculate a performance bonus based on these criterion. Treas. Reg. §1.162-27(e)(2)(ii).

35. Moreover, the performance goals of the SIP (including the SIP Amendment) are not adequately defined in reference to particular line-items on the Company's financial statements, generally accepted accounting principles ("GAAP"), or, where based on non-GAAP measures, how those performance goals are to be calculated. SEC Regulations require that for target levels that are non-GAAP financial measures, disclosure of how that number is calculated from the registrant's audited financial statements must be made. 17 C.F.R. § 229.402(b), Instruction 5. Absent reference to a specific line item, it is impossible for a third party to measure the performance of an employee against the criteria of the plan. The lack of specificity in the SIP (including the SIP Amendment) in setting performance goals means that it is not an objective plan, and bonuses paid pursuant to the SIP (including the SIP Amendment) are not tax-deductible.

36. The Treasury Regulations are supplemented by SEC Regulations, Treas. Reg. § 1.167-27(e)(4)(v), which requires that a proxy statement must disclose targets or discuss how difficult it will be for the company to achieve the undisclosed target levels. 17 C.F.R. § 229.402(b) (Instruction 4). Here, the performance goals of the SIP (including SIP Amendment) are not adequately disclosed in the Proxy Statement, and are subjective, vague, and uncertain, both for tax purposes and for informing the stockholders how to vote, causing the Proxy Statement to contravene 17 C.F.R. § 229.402(b).

163282

37.     Because the Proxy Statement fails to adequately disclose (a) how difficult it will be for the company to achieve the target levels, and (b) how non-GAAP target levels are calculated from the audited financial statements, as set forth above, the Proxy Statement violates 15 U.S.C. § 78n(a) and IRC §162(m).

38.     With the aforementioned defects, the Proxy Statement was false to represent that the Company's performance compensation plans -- the LTIP and SIP (including SIP Amendment) -- are intended to comply with IRC § 162(m).

## HARM TO AK STEEL AND ITS SHAREHOLDERS

39.     The false or misleading disclosures regarding the LTIP and SIP (including the SIP Amendment) constitute breach of the duties of loyalty and care.  The aforesaid breach of duties of loyalty and care and the misrepresentations to and omissions from the Proxy Statement have caused injury to the Company and its stockholders.

40.     The board's payment of compensation that is not tax-deductible constitutes waste. As Learned Hand, Felix Frankfurter, and others have famously stated, there is no patriotic duty to arrange your business so as to increase your taxes, because taxes are enforced exactions, not voluntary contributions.

41.     Moreover, the board's grant of awards under the LTIP and the SIP (including the SIP Amendment) without proper stockholder approval violates public policy.

42.     The Company and its shareholders have been harmed and will be harmed by the failure of the LTIP and SIP (including the SIP Amendment) awards to comply with IRC § 162(m).

## DEMAND FUTILITY ALLEGATIONS

43.    Plaintiff has not made any demand on the Company's board of directors to institute this action because none is required since a majority of the board is interested and lacks independence, and its acts are not otherwise protected by the business judgment rule.

44.    The majority of the board is either interested in the transactions and events alleged herein, or it otherwise lacks independence for the following reasons:

a.    Defendant Wainscott, as CEO of the Company, is interested in the payments to be made under the LTIP, rendering him incapable of making an impartial decision regarding pre-suit demand.  Defendant Wainscott is also interested in the payments to be made under the SIP (including the SIP Amendment).

b.    Five members of the Company's board of directors, defendants Abdoo, Brinzo, Hill, Jenkins, and Michael, are members of the Compensation Committee that adopted the LTIP (as amended and restated as of April 12, 2010) and the SIP Amendment (as of March 18, 2010).  The Proxy Statement disclosures regarding the LTIP as amended and restated and the SIP Amendment are so patently defective that the Compensation Committee members are liable for having adopted these amendments, and those directors are interested and lack independence for that reason.

c.    Five members of the Company's board of directors, defendants Abdoo, Brinzo, Cuneo, Jenkins, and Peterson, are members of the Governance Committee, which is charged with the responsibility for implementing the policies underlying § 162(m).  The Proxy Statement disclosures regarding the LTIP as amended and restated and the SIP Amendment are so patently defective that the Governance Committee members are liable for the board act of adopting them, and those directors are interested and lack independence for that reason.

16

d.      Of the ten members of the board, all of them are eligible to participate in the SIP (including the SIP Amendment) and are interested in the payments to be made under them. The entire board is therefore interested in the transactions and events alleged herein, and/or otherwise lacks independence.

47.      Delaware law excuses pre-suit demand if at least half of the board is unable to claim the protection of the business judgment rule. Here, the members of the board are disabled by their interest to claim that protection.

48.      Even in the absence of a traditionally interested (or non-independent) board, demand is excused under the facts at bar. The demand requirement and its exceptions are to encourage intra-corporate resolution of disputes and to obtain the business judgment of the board on whether the litigation is in the best interest of the corporation and its shareholders.   However, where a stockholder sues the board of directors over an act that is not a decision concerning the management of the business and affairs of the corporation, but one of disclosure, the business judgment rule does not apply.  Delaware law excuses demand whenever the challenged act of the board is not the product of a valid exercise of business judgment, regardless of whether a majority of the board is disinterested and independent. The Board's conduct concerning the misrepresentations in, and the omissions from, a proxy statement are not matters of business judgment, and they are not protected by the business judgment rule for the following reasons:

a.      When, for the stockholders' annual meeting, a corporate board solicits stockholders' votes for an executive compensation plan, the board owes the stockholders a statutory and fiduciary duty of full and fair disclosure, meaning that all material facts must be fully and fairly disclosed and no material facts may be omitted. This duty of disclosure is a thing apart from the duty and authority to deal with the business and property of the corporation.  Courts give deference to a

163282

corporate board of directors as to questions of management of the corporation's business, but not as to questions of the board's performance of its disclosure duties, and for three reasons. First, a board's decision, even in good faith to misstate or to omit a material fact cannot be defended on the grounds that reasonable persons could differ on the subject. Second, although courts may not be well suited to making business decisions, courts are well suited to deciding questions concerning the quality of, and circumstances surrounding, disclosures. Third, allegations that a proxy statement has materially false or misleading representations and omissions could raise issues as to the honesty and good faith of the directors.

b.     As with Delaware law, under federal policy, there is no need for prior demand on the board of directors with respect to the claim under the Exchange Act of misrepresentations and omissions in the Proxy Statement.

c.     At bar, the Proxy Statement contains materially false or misleading statements and omissions concerning the tax deductibility of awards under the LTIP and the SIP (including the SIP Amendment) and the standards and variables used for determining awards under these compensation and corporate governance plans, and the amounts of those awards.

49.     Awards under the LTIP and SIP (including the SIP amendment) will not be tax deductible and therefore will constitute waste, which is not protected by the business judgment rule, and it excuses pre-suit demand.

50.     The business judgment rule is inapplicable because the members of the board of directors violated United States public policy.

163282

## FIRST CLAIM FOR RELIEF
### (Derivative Claim On Behalf of the Company Against All Director and Executive Defendants for Breach of Duties of Loyalty and Care)

51.    Paragraphs 1 through 50 state a claim for relief as a stockholder's derivative action on behalf of AK Steel against the Director Defendants and the Executive Defendants.

52.    The acts of the Director Defendants in distributing the false or misleading Proxy Statement have injured the Company by interfering with proper governance on its behalf that follows the free and informed exercise of the stockholders' right to vote for directors and for compensation plans.

53.    The acts of the Executive Defendants and the Director Defendants in distributing the false and misleading Proxy Statement, including their names in it, authorizing the acceptance and the payment of non-tax-deductible compensation under the LTIP and the SIP (including the SIP Amendment) and failing to seek informed stockholder re-approval of the LTIP and the SIP (including the SIP Amendments) constitute breaches of these defendants' respective duties of loyalty to and care for the Company and its stockholders.

54.    As a result of these actions of the Director Defendants and the Executive Defendants, the Company has been and will be damaged.

## SECOND CLAIM FOR RELIEF
### (Derivative Claim On Behalf of the Company Against Director Defendants for Waste)

55.    Paragraphs 1 through 50 state a claim for relief as a stockholder's derivative action on behalf of AK Steel against the Director Defendants

56.    The conduct of the Director Defendants in seeking stockholder re-approval of the LTIP and SIP (including the SIP Amendments) without adhering to SEC regulations and IRC §

19

162(m) and its accompanying regulations, causing the compensation to be non-tax-deductible, is

irrational and constitutes waste, and it has caused and will continue to cause injury to the

Company.

57.    As a result of these actions of the Director Defendants, the Company has been and

will be damaged.

### THIRD CLAIM FOR RELIEF

### Claim in Favor of the Company against the Executive Defendants for Unjust Enrichment

58.    Paragraphs 1 through 47 state a claim for relief as a stockholder's derivative

action against the Executive Defendants.

59.    The Executive Defendants' acceptance of compensation that is not tax-deductible

is the result of the Director Defendants' violation of their duty to align the Covered Employees'

compensation with the interests of the Company and its stockholders.  The Company's

compensation arrangements and practices violate the public policy of the United States, and they

relieve the Covered Employees from the discipline of performance under objective standards,

that have been effectively pre-approved by the stockholders.

60.    The Executive Defendants have enjoyed and will enjoy unjust enrichment by their

receipt of non-tax-deductible compensation constituting waste and contravention of public

policy.

61.    As a result of these actions of the Director Defendants and Executive Defendants,

the Company has been and will be injured.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for the following relief:

A.      An injunction requiring correction of the false or misleading statements and omissions in the Proxy Statement;

B.      An injunction against awards and payments under the LTIP to the Covered Employees;

C.      An injunction against awards and payments under the SIP (including the SIP Amendment) to the Covered Employees;

D.      For an order requiring an equitable accounting with disgorgement in favor of the Company for the losses that it has and will sustain by virtue of the conduct alleged herein;

E.      For an order awarding plaintiff the costs and disbursements of this action, including reasonable accountants', experts', and attorneys' fees;

F.      For an order awarding monetary relief in addition to or in substitution to the specific equitable relief herein requested; and

G.      Granting such additional or different relief, including monetary recovery, as the interests of justice or equity may require.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 7, 2011

BIGGS and BATTAGLIA

By: /s/Robert Goldberg
Robert D. Goldberg (I.D. No. 631)
921 North Orange Street
Wilmington DE 19899
Tel: 302.655.9677
goldberg@batlaw.com
*Attorneys for Plaintiff*

21

*Of Counsel*
BARRACK, RODOS & BACINE
Alexander Arnold Gershon
425 Park Avenue – 31st Floor
New York, New York 10022
Telephone (212) 688-0782

BARRACK, RODOS & BACINE
Daniel E. Bacine
Jeffrey A. Barrack
Julie B. Palley
3300 Two Commerce Square
2001 Market Street
Philadelphia, Pennsylvania 19103
Telephone (215) 963-0600

163282

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

RUTH ABRAMS,

        Plaintiff,

      v.

JAMES L. WAINSCOTT, ROBERT H. JENKINS,
RICHARD A. ABDOO, JOHN S. BRINZO,
DENNIS C. CUNEO, WILLIAM K. GERBER,
DR. BONNIE G. HILL, RALPH S.
MICHAEL III, SHIRLEY D. PETERSON,
DR. JAMES A. THOMSON, ALBERT E.
FERRARA, JR., DAVID C. HORN, JOHN F.
KALOSKI, DOUGLAS W. GANT and
AK STEEL HOLDING CORPORATION,

        Defendants.

C. A. No. _____

JURY TRIAL DEMANDED

## VERIFICATION

I, RUTH ABRAMS, under penalty of perjury, hereby verify that I am the plaintiff

in this derivative action brought on behalf of AK Steel Holding Corporation, and that the facts

set forth therein are true and correct to the best of my knowledge, information, and belief.

    April
Dated: March 6, 2011

_____
RUTH ABRAMS