IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**RUTH ABRAMS,**

                Plaintiff;

      v.

**JAMES L. WAINSCOTT, et al.,**

                Defendants.

Civil Action No. 11-00297-RGA

MEMORANDUM OPINION

Robert D. Goldberg, Esq., Biggs and Battaglia, Wilmington, DE; Alexander Arnold Gershon, Esq., Barrack, Rodos & Bacine, New York, NY; Michael A. Toomey, Esq., Rodos & Bacine, New York, NY; Daniel E. Bacine, Esq., Barrack, Rodos & Bacine, Philadelphia, PA, Attorneys for the Plaintiff.

Jon E. Abramczyk, Esq., Morris Nichols, Arsht & Tunnell LLP, Wilmington, DE; John P. DiTomo, Esq., Morris, Nichols, Arsht & Tunnell LLP, Wilmington, DE; Gregory A. Markel, Esq., Cadwalder, Wickersham & Taft LLP, Attorneys for the Defendants James L. Wainscott, Robert H. Jenkins, Richard A. Abdoo, John S. Brinzo, Dennis C. Cuneo, William K. Gerber, Dr. Bonnie G. Hill, Ralph S. Michael III, Shirley D. Peterson, Dr. James A Thomson, Albert E. Ferrara, Jr., David C. Horn, John F. Kaloski, Douglas W. Gant.

C. Barr Flinn, Esq., Young Conaway Stargatt & Taylor, LLP, Wilmington, DE; Adam W. Poff, Esq., Young Conaway Stargatt & Taylor, LLP, Wilmington, DE, Attorneys for Defendant AK Steel Holding Corporation.

November 13, 2013

ANDREWS, UNITED STATES DISTRICT JUDGE:

Presently before the Court for disposition is the Defendants James L. Wainscott, et al.'s

Motion to Dismiss the Second Amended Complaint. (D.I. 33). This matter has been fully

briefed. (D.I. 34, 35, 36, 37, 38, 39, 43). The Court has both federal question and diversity

jurisdiction. For the reasons set forth herein, the Defendants' motion is **GRANTED**.

## BACKGROUND

The Court dismissed the Plaintiff's First Amended Complaint as it lacked sufficient

allegations to plead demand futility. (D.I. 27). The Plaintiff then timely refiled her complaint.

(D.I. 28). The Defendants responded with the instant motion. (D.I. 33).

Plaintiff alleged in the Second Amended Complaint three distinct fact patterns:

(1) Defendants knowingly and intentionally violated the Long Term Performance Plan (the 'LTPP') by retroactively increasing the amounts the executive Defendants were entitled to receive under this plan. . . ;

(2) AK Steel Holding Corporation's ('AK Steel' . . . ) 2010 proxy statement . . . contained false or misleading information . . . ; and

(3) Shareholders were coerced into voting for the performance goals of the LTPP. . . and the [Stock Incentive Plan ("SIP")]. . . because they were told that these performance goals would continue to be used with or without shareholder approval, but that without this approval compensation paid would cost [AK Steel] more money.

(D.I. 36 at 7 (internal citations omitted)). The Plaintiff alleges four derivative claims and one

direct claim. The four derivative claims are: (1) Breach of Duties under § 14(a) of the Securities

and Exchange Act, (2) Breach of Duty of Loyalty, (3) Waste (based on the payment of non-

deductible compensation), and (4) Unjust Enrichment. (D.I. 28 at 22-25). The Plaintiff

additionally alleges a direct claim of Coercion. (D.I. 28 at 25).

1

## DISCUSSION FOR DERIVATIVE CLAIMS

### 1. Legal Standard

Pursuant to FED.R.CIV.P. 23.1(b)(3), a shareholder bringing a derivative action must file a verified complaint that states with particularity: "(A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." FED.R.CIV.P. 23.1(b)(3) "The purpose of the demand requirement is to afford the directors an opportunity to exercise their reasonable business judgment and waive a legal right vested in the corporation in the belief that its best interests will be promoted by not insisting on such right." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96 (1991) (internal quotation marks omitted). "Although Rule 23.1 provides the pleading standard for derivative actions in federal court, the substantive rules for determining whether a plaintiff has satisfied that standard are a matter of state law." *King v. Baldino*, 409 F. App'x 535, 537 (3d Cir. 2010). "Thus, federal courts hearing shareholders' derivative actions involving state law claims apply the federal procedural requirement of particularized pleading, but apply state substantive law to determine whether the facts demonstrate demand would have been futile and can be excused." *Kanter v. Barella*, 489 F.3d 170, 176 (3d Cir. 2007). The Delaware Supreme Court has characterized the exercise of determining demand futility as deciding "whether, under the particularized facts alleged, a reasonable doubt is created that: (1) the directors are disinterested and independent and (2) the challenged transaction was otherwise the product of a valid exercise of business judgment." *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984).

2

## 2. Discussion

### *Aronson – First Prong*

The Plaintiff has not pleaded facts to create reasonable doubt that "the directors are disinterested and independent." *Id.* The Plaintiff alleges that demand is excused because "[a]ll of the members of the Board are eligible to participate in the SIP and are interested in the payments to be made under [it]." (D.I. 36 at 19 (citing D.I. 28, ¶ 60(b))). The Plaintiff maintains that the directors' interest in their stock option compensation excuses the demand requirement. This argument fails for the same reason that this Court previously found, in relation to the First Amended Complaint, that the Plaintiff failed to plead particularized facts to support the allegation that the majority of the AK Steel Directors had a financial interest that raised a reasonable doubt that they were disinterested. This Court held:

> 3. In moving to dismiss, Defendants first argue that Plaintiff failed to plead particularized facts demonstrating demand was excused. (D.I. 21, pp. 18-32). Under the first *Aronson* prong, Plaintiff alleged Defendant Wainscott, as CEO, is interested in the payments under the LTPP, SIP, and SIP Amendment. (D.I. 15, ¶ 71). Plaintiff alleged the nine remaining outside members of the Board (the Director Defendants) are interested in SIP payments, and are "therefore interested in the transactions and events alleged herein." (*Id.* ¶¶ 25, 71; D.I. 22 at 39-40). These Director Defendants are not participants in the LTPP plan and their retainer under the SIP is not performance-based. (D.I. 15, ¶¶ 25, 71; D.I. 21, Ex. 1 at 27). Plaintiff alleged the Director Defendants were interested in the proxy's SIP amendments that asked shareholders to extend the expiration period during which restricted stock could be granted, and to increase the number of shares available for the grant of restricted stock awards, because the Director Defendants receive at least half of their annual retainer in the form of restricted stock units. (*Id.* ¶ 71).

> 4. Defendants argue that director compensation under the SIP does not make the directors "interested" in the result of the 2010 proxy, as the SIP would have continued to exist and provide that compensation regardless of the result of the 2010 vote and the tax consequences thereof. (D.I. 21 at 21). The issue here is whether pleading that the outside directors were interested in the proxy statements' representations about restricted stock creates reasonable doubt as to whether the outside directors were interested in the proxy statement's representations about performance-based compensation under the SIP and LTPP -

3

the heart of Plaintiff's claim.      The performance-based compensation
representations appear in Proposals 3 and 4 in the Proxy Statement, and the
restricted stock representations appear in Proposal 5.   (D.I. 21, Ex. 1 at 71-81).

     5.   Plaintiff's allegations that the outside directors were interested in the
outcome of Proposal 5 do not plead particularized facts creating a reasonable doubt
that the outside directors (*i.e.*, a majority of the board) are interested as to Proposals
3 and 4.   Plaintiff does not allege any basis to believe that the directors would not
continue to receive their stock compensation under the SIP regardless of whether
the SIP performance goals in Proposal 4 passed, nor does Plaintiff allege any
connection between the SIP amendment in Proposal 5, and the performance goals
in Proposals 3 and 4.   The demand futility analysis proceeds transaction-by-
transaction.  *Khanna v. McMinn*, 2006 WL 1388744, *14 (Del. Ch. May 9, 2006).
The transactions here - the proxy proposals - split the Director Defendants' interest
off from the claims, distinguishing this case from *Hoch v. Alexander*, 2011 WL
2633722 (D.Del. July 1, 2011) and *Resnik v. Woertz*, 774 F.Supp.2d 614 (D. Del.
2011).   Plaintiff has failed to plead that demand is excused under *Aronson*'s first
prong.

(D.I. 27 at 2-4).

Here, the Plaintiff adds an additional allegation, not present in the First Amended

Complaint, that "[a]ll of the members of the board are eligible to participate in the Amended SIP

and are interested in the nearly unlimited stock option payments the Compensation Committee

can award them under the plan."  (D.I. 28 at 21).  The Plaintiff argues that these "nearly

unlimited stock option payments" defeat the need to seek demand as "all of the members of the

Board were specifically interested in ensuring a positive shareholder vote for the first two

amendments to the SIP presented in Proposal 5 because these amendments extended the time

period during which directors could receive compensation under the SIP and increased the pool

from which their compensation was drawn."  (D.I. 36 at 20).

While the pool of shares increased, this fact alone is not sufficient to raise a reasonable

doubt that the outside directors (*i.e.*, a majority of the board) were disinterested in the proposals.

As demand futility analysis proceeds transaction-by-transaction, the transaction here – the proxy

proposals – split the Director Defendants' interest in determining their own pay from both the

increase in the time period during which Directors receive compensation and the increase in the

options pool. In other words, the Directors' ability to grant themselves stock remains unaffected

by the proxy vote and exists regardless of any of the proxy proposals. (D.I. 34-1 at 101).

Therefore, for the reasons stated above and in this Court's previous opinion, the Plaintiff has

failed to plead sufficient facts to raise a reasonable doubt concerning the Directors' disinterest.

### *Aronson – Second Prong*

The Plaintiff fails to raise a reasonable doubt about the business judgment rule. The

Plaintiff's Second Amended Complaint fails for the same reason that the First Amended

Complaint failed. The Court previously held:

> 6. This brings the inquiry to *Aronson*'s second prong - whether Plaintiff
> has alleged particularized facts to create a reasonable doubt as to whether the
> protections of the business judgment rule are available to the Board. Plaintiff
> alleged demand is excused because: a) the issue here is one of disclosure; b) at least
> half the board cannot claim protection of the business judgment rule because they
> are members of the Compensation Committee that developed, approved,
> recommended, and implemented the LTPP and SIP, and had at various earlier times
> allegedly violated the express terms of then-existing LTPP; c) a majority of the
> board violated United States public policy; and d) the compensation at issue
> comprises waste, which is not protected by the business judgment rule. (D.I. 15
> ¶¶ 72-73; D.I. 22 at 36-38; 40-42).

> 7. Defendants argue that Plaintiff's disclosure allegations fail because they
> do not plead bad faith, specifically "what the directors knew and when" or that the
> Directors knew the 2010 Proxy Statement contained false or misleading statements.
> (D.I. 21 at 24-25, 30-31; D.I. 23 at 17). In response, Plaintiffs argue that disclosure
> claims are not protected by the business judgment rule as a matter of law. (D.I. 22
> at 40-41) (citing *In re Anderson, Clayton Shareholder Litig.*, 519 A.2d 669 (Del.Ch.
> 1986); *In re Tri-Star Pictures, Inc. Litig.*, 1990 WL 82734 (Del.Ch. June 14, 1990);
> *Lewis v. Leaseway Transp. Corp.*, 1990 WL 67383 (Del.Ch. May 16, 1990)).

> 8. Plaintiff's cited cases do not support the proposition that derivative
> claims based on a proxy statement nondisclosure do not need to meet the second
> *Aronson* prong in the context of a Rule 23.1 motion. *See Bader v. Blankfein*, 2008
> WL 5274442, *6 (E.D.N.Y. Dec. 19, 2008) ("If shareholders could elect to sue on

behalf of a corporation without consulting the board of directors whenever they deemed a proxy statement to contain materially false information, shareholders could effectively usurp the board's decision as to whether litigation was merited."); *Freedman v. Adams*, 2012 WL 1099893, *16 n.155 (Del. Ch. Mar. 30, 2012) "[T]he Plaintiff appears to conflate the fact that disclosure claims are generally not subject to the demand requirement (because they are usually direct claims) with the idea that a properly pled disclosure claim excuses demand under *Aronson*'s second prong.") (emphases omitted).

9.    Plaintiff also pled that demand is excused under *Aronson*'s second prong because at least half the board sits on the Compensation Committee that violated the LTPP.   (D.I. 15, ¶ 73).   Defendant argues that Plaintiff failed to plead that the violation was knowing and intentional.   (D.I. 21 at 30, D.I. 23 at 15-16). Plaintiff responds that awarding compensation in violation of an approved compensation plan is not protected by the business judgment rule.   (D.I. 22 at 38) (citing *Weiss v. Swanson*, 948 A.2d 433, 441-42 (Del. Ch. 2008); *Ryan v. Gifford*, 918 A.2d 341, 357-58 (Del. Ch. 2007); *Sanders v. Wang*, 1999 WL 1044880, *4-5 (Del. Ch. Nov. 8, 1999)).

10.    Plaintiff's cited cases do not convince the Court of the blanket proposition that a shareholder need only allege violation of a compensation agreement to excuse demand, without additional allegations of knowledge and intent.    *Weiss* specifically provides that "allegations in a complaint rebut the business judgment rule where they support an inference that the directors intended to violate the terms of stockholder-approved option plans."   948 A.2d at 441.   The *Ryan* Court, discussing the allegations before it and *Sanders*, stated that "[a] board's knowing and intentional decision to exceed the shareholders' grant of express (but limited) authority raises doubt regarding whether such decision is a valid exercise of business judgment and is sufficient to excuse a failure to make demand."   918 A.2d at 354.   *Sanders* and *Ryan* were also explicitly fact-specific: in *Ryan*, the "unusual facts alleged" of "knowing and intentional violations" of the stock option plans raised reason to doubt that the challenged transactions resulted from a valid exercise of business judgment, while in *Sanders*, demand was excused "[f]or immediate purposes" because the plaintiff had pled violation of an "express," "unambiguous" provision where it was "clear from the uncontroverted facts" that the compensation award exceeded the provision.   *Id; see Sanders*, 1999 WL 1044880 at *4-5.

[11].   Next, Plaintiff pled that demand is excused because "a majority of the Board violated United States public policy." (D.I. 15, ¶ 73). As with Plaintiff's LTPP violation pleading, Defendants argue that demand is not excused for Plaintiff's public policy complaint because Plaintiff does not allege a knowing violation.   (D.I. 21 at 31).   Plaintiff does not defend its one-sentence public policy allegation in opposing Defendants' motion.   (D.I. 22).   It appears that Plaintiff's

6

once sentence fails to plead particularized facts under the second *Aronson* prong in any case.

> [12]. Finally, Plaintiff pled that demand is excused because the claim of waste, based on the inability to take tax deductions under the LTPP and SIP, does not invoke the business judgment rule. (D.I. 15, ¶¶ 73-75; D.I. 22 at 37). Defendants argue that a waste claim still requires pleading particularized facts to create a reasonable doubt that the board's decisions were the product of a valid exercise of business judgment to excuse demand. (D.I. 21 at 26-29 (citing *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006)*; White v. Panic*, 783 A.2d 543, 554 n.36 (Del. 2001); D.I. 23 at 11-13). Indeed, the Delaware Supreme Court in *White* affirmed dismissal of a waste claim for failure to show demand was excused under *Aronson*'s second prong. 783 A.2d at 554-55. While Plaintiff's cited case, *Leung v. Schuler*, provides that demand is excused for a "cognizable claim of waste," it proceeded to dismiss a waste claim under Rule 23.1 for failing to state a claim that would excuse demand. 2000 WL 264328, *10 (Del. Ch. Feb. 29, 2000). *Leung* does not support Plaintiff's argument that demand is excused merely because a claim of waste is alleged.

(D.I. 27 at 4-7) (footnote omitted).

The Plaintiff's only significant change to the First Amended Complaint is to add the assertion that Defendants "knowingly and intentionally" violated the LTPP. (D.I. 28 at 21). However, this assertion is conclusory in nature and fails to meet the standard for pleading knowledge and intent. The Court previously found that the Plaintiff's assertion that the Defendants were aware of a specific treasury regulation and disregarded its content was not sufficient to meet the pleading standard. This finding continues to hold true, even though the Plaintiff adds the phrase "knowingly and intentionally." This same reasoning holds true for the Plaintiff's allegation that the Defendants were aware of the anti-discretion requirement of § 162(m) and that the Defendants' knowledge should be implied because the Compensation Committee's charter requires review of the LTPP. (D.I. 28 at 13-14). None of these assertions rise to the level required by the Delaware Supreme Court that the Plaintiff "plead with

particularity the specific conduct in which each defendant 'knowingly' engaged, or that the defendants knew that such conduct was illegal." *Wood v. Baum*, 953 A.2d 136, 142 (Del. 2008).

The Plaintiff reasserts her arguments regarding *Ryan v. Gifford*, *Sanders v. Wang*, and *Weiss v. Swanson*. (D.I. 36 at 17-20). These arguments were made in the Plaintiff's opposition of Defendants' Motion to Dismiss the First Amended Complaint (D.I. 22 at 38) and specifically addressed by this Court. (D.I. 27 at 5-6). The Court readopts its previous analysis. The Court also readopts its previous analysis regarding the waste claim, as the Plaintiff does not set forth any significant new facts that would excuse demand in regard to the waste claim.

Therefore as the Plaintiff has failed to allege particularized facts creating a reasonable doubt that (1) the directors are disinterested and independent and (2) the challenged transactions were otherwise the product of a valid exercise of business judgment, the Plaintiff has not demonstrated demand futility as required for derivative claims.

## DISCUSSION FOR DIRECT CLAIM

### 1. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a claim if it fails to "state a claim upon which relief can be granted . . . ." FED.R.CIV.P. 12(b)(6). When reviewing a 12(b)(6) motion, the Court must "accept as true all material allegations of the complaint." *Seinfeld v. O'Connor*, 774 F. Supp. 2d 660, 664 (D. Del. 2011). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks omitted). Thus, "[a] motion to dismiss pursuant to Rule 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *Maio v. Aetna*,

8

*Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks omitted). However, while "heightened fact pleading of specifics" is not required, the plaintiff must "nudge[] their claims across the line from conceivable to plausible . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## 2. Discussion

The Plaintiff asserts one direct claim against the Defendants for coercion of her shareholder vote. The claim, which is new to the Second Amended Complaint, is based on Delaware law. Specifically, the Plaintiff claims that the Defendants "construct[ed] a vote to coerce shareholders to vote for the LTPP and SIP's performance goals . . . ." (D.I. 28 at 25). The Defendants argue that this claim fails to state a claim under FED.R.CIV.P. 12(b)(6).

The Plaintiff claims that the stockholder vote is null and void because "stockholders were forced to decide between the lesser of two evils." (D.I. 36 at 37 (citing *Williams v. Geier*, 671 A.2d 1368, 1383 (Del. 1996))). Furthermore, the Plaintiff argues, "shareholders could not vote based on the merits of the performance goals because shareholders were told that they would continue to be used with or without shareholder consent, but that such payments would cost AK Steel more without their consent . . . . Given the non-choice between these identical options, shareholders were effectively forced to approve the less costly [option]." *Id.* at 36-37. The Defendants respond by arguing that, "The Proxy's disclosure that performance-based compensation granted under the Plans in the future would not qualify as tax-deductible under Section 162(m) if shareholders did not reapprove the terms was not a threat, but rather ensured the shareholders were fully informed." (D.I. 37 at 20).

The Supreme Court of Delaware set forth the legal doctrine for this Court to follow in *Williams v. Geier*. The Court stated:

9

[A] board of directors seeking stockholder approval of a transaction must walk a fine line between disclosures designed to inform and disclosures which may be seen as coercive. An otherwise valid stockholder vote may be nullified by a showing that the structure or circumstances of the vote were impermissibly coercive. Wrongful coercion may exist where the board or some other party takes actions which have the effect of causing the stockholders to vote in favor of the proposed transaction for some reason other than the merits of that transaction. In the final analysis, however, the determination of whether a particular stockholder vote has been robbed of its effectiveness by impermissible coercion depends on the facts of the case.

671 A.2d 1368, 1382-83 (Del. 1996) (internal citations and quotation marks omitted).

The disputed portions of the proxy statement read as follows:

### *Relevant portion of Proposal 3*

These performance goals were most recently approved by stockholders at the Company's Annual Meeting in May 2005. In the event stockholders fail to re-approve the performance-based terms of the Long-Term Plan, *any performance-based compensation granted by the Company to Executive Officers under the Long-Term Plan in the future would not meet the conditions for tax deductibility* under Section 162(m), *thereby increasing the Company's total cost of such compensation.*

As discussed further below, the Board of Directors believes that the Company's ability to take advantage of the tax deductibility of performance-based awards granted under the Long-Term Plan benefits the Company and is in the best interests of its stockholders.

### *Relevant Portion of Proposal 4*

The Company's stockholders most recently approved the material terms of the Stock Plan's performance goals in May 2005 and grants of performance awards under the Stock Plan *currently may qualify as performance-based compensation that is tax deductible to the Company under Section 162(m).* Under Section 162(m), however, in order for performance awards under the Stock Plan to continue to qualify as deductible performance-based compensation, the material terms of the plan's performance goals must be approved by the stockholders no later than the first stockholder meeting that occurs in the fifth year following the year in which the goals last received stockholder approval. Since the last such stockholder approval was received in 2005, the Company is now asking our stockholders to re-approve the Stock Plan's performance goals in order to preserve the tax status of performance awards under that plan as performance-based, and thereby allow the Company to continue to fully deduct the compensation expense related to the awards. *If this proposal is not adopted, competitive or other circumstances may*

> *cause the Committee to continue to grant performance awards under the Stock*
> *Plan*, but should it do so, *certain awards to Executive Officers may no longer be*
> *fully tax deductible by the Company*, *increasing the total net cost to the Company*
> *of making such awards*.

(D.I. 34-1 at 77-78, 81) (emphasis added).

The above statements do not correspond with what the Plaintiff alleges. For example, while the Plaintiff alleges that the "shareholders were told that [performance goals] *would* continue to be used with or without shareholder consent," the proxy statement states that "competitive or other circumstances *may* cause the Committee to continue to grant performance awards. . . ." (D.I. 36 at 36-37; D.I. 34-1 at 81 (italics added)). Furthermore, the proxy statement makes clear that the current performance awards *may* be tax-deductible, not that they *are* tax-deductible. (D.I. 34-1 at 81). Therefore, without the Plaintiff's mischaracterizations of the proxy statement, there are no facts proffered by the Plaintiff on which she could base her direct claim.

The Court rejects the Plaintiff's argument that her case is analogous to *Shaev*. (D.I. 36 at 37-38). The Third Circuit in *Shaev* found "that Datascope's Board made a materially false statement in the proxy statement when it stated that [CEO's] bonus would be deductible if the shareholders approved it." *Shaev v. Saper*, 320 F.3d 373, 381 (3d Cir. 2003). The Third Circuit based this determination, at least in part, on the fact that a proxy statement must at a minimum contain "the material terms of the incentive plan and general performance goals on which the executive's compensation is based. . . ." *Id*. at 383. Furthermore, in *Shaev* the Board failed to disclose that the CEO, who was a major shareholder, "had not earned the $3,285,714 bonus under the terms of the currently existing plan," and therefore that the Defendants would have had actual knowledge that the compensation plan would not be tax deductible. *Id*. at 382.

11

Unlike in *Shaev*, here there is no evidence that the proposed bonus plan "would exceed the amount to which [the Defendants] would have been entitled to under the extant [bonus plan] and to what extent." *Id*. at 383. Therefore Claim 5 fails to state a claim for coercion as a matter of law.

## Conclusion

For the reasons above, the Court will **GRANT** Defendant's Motion to Dismiss the Plaintiff's Second Amended Complaint (D.I. 33) **WITH PREJUDICE**. An appropriate order will be entered.

12